# AGREEMENT

## between

## MY SIGN GUY
### (Chicago, IL)

## and

## SIGN, DISPLAY, PICTORIAL ARTISTS, WOOD FINISHERS, METAL POLISHERS & ALLIED TRADES LOCAL UNION NO. 830

## June 1, 2022 through May 31, 2025

TABLE OF CONTENTS

Exhibit A

Table of Contents.................................................................................................1

Agreement/Witnesseth/Recognition....................................................................2

ARTICLE I, Work Day – Work Week.....................................................................3

ARTICLE II, Rates of Pay.....................................................................................4

ARTICLE III, Overtime..........................................................................................5

ARTICLE IV, High Time.........................................................................................6

ARTICLE V, Vacations..........................................................................................7

ARTICLE VI, Paid Holidays...................................................................................8

ARTICLE VII, Jury Duty and Funeral Leave..........................................................9

ARTICLE XVIII, Transportation, Meals & Incidental Expenses.............................10

ARTICLE IX, Safety........................................................................................11 & 12

ARTICLE X, Time Reports – Division of Work – Payroll........................................13

ARTICLE XI, Seniority – Layoffs - Severance Pay...............................................14

ARTICLE XII, Sub-Contracting - Union Label – Discrimination.........  15,16 & 17

ARTICLE XIII, Union Security-Check-off - Stewards............................18 & 19

ARTICLE XV, Insurance – Employers Liability......................................................20

ARTICLE XV, Welfare......................................................................................21 & 22

ARTICLE XVI, Pension Fund............................................................................23 & 24

ARTICLE XVII, Labor Management Cooperation Fund.........................25 & 26

ARTICLE XVIII, Management Rights.....................................................................27

ARTICLE XIX, Grievance & Arbitration.................................................................28

ARTICLE XX, Savings & Duration.........................................................................29

ARTICLE XXI, Joint Trust Fund............................................................................30

-1-
### AGREEMENT

Agreement entered into as of the 1st of June 2022 by and between MY SIGN GUY "(EMPLOYER)" and Sign, Display, Pictorial Artists Wood Finishers, Metal Polishers and Allied Trades, Local Union 830 and District Council #14 of the International Union of Painters and Allied Trades, AFL-CIO ('UNION').

<u>WITNESSETH</u>

That it is the intent and purpose of the parties hereto that this agreement shall promote and improve the industrial and economic relationship between the EMPLOYER and the UNION to eliminate unnecessary strikes, lockouts and other interference's with production and to set forth the basic agreement covering, rates of pay, hours of work and conditions of employment to be observed by the parties hereto.

Now, therefore, in consideration of the premises and the mutual agreements herein stated, it is agreed as follows:

<u>RECOGNITION</u>

The EMPLOYER recognizes, acknowledges, agrees that Local Union 830 is, within the meaning of Section 9 (a) of the National Labor Relations Act, the exclusive representative for the purpose of collective bargaining, of all the Employer's Employees whenever such Employees may be employed, in the following classifications of work: Sign Painter, Pictorial, Commercial, Pattern and Layout Sign Painters, Pattern Makers, Fabricators, Display Workers, Flex Face Workers, Installers, Billposters, Construction, Sign Spray Painters, Neon Workers, Designers, Architectural Film/Graphic and Vinyl Workers, Computer Artist and Computer Assistant, Computer Aided Manufacturing Operator, All Computer generated Sign Face Workers, Silk Screen Workers and similar or related classifications of work. This agreement covers all the above-mentioned employees performing work of any description coming under the jurisdiction of the International Union of Painters and Allied Trades.

The EMPLOYER will not recognize any other Agreement between the EMPLOYER and employees contrary to the terms hereof, and entering into such AGREEMENT shall be considered a breach of this AGREEMENT on the part of the EMPLOYER.

-2-

<u>ARTICLE I</u>

## WORK-DAY  WORK-WEEK

SECTION

1.    The normal workday shall be eight (8) hours (7:30a.m. to 3:30 p.m. or 8:00 a.m. to 4:30 p.m. or 8.30 a.m. to 5:00 p.m.), exclusive of meal periods.

2.    The normal work week shall be forty hours (40) hours Monday through Friday, Five (5) normal work days, but this AGREEMENT shall not be construed as guaranteeing any specific hours of work per week.

3.    No work shall be done on the paid holidays recognized herein except in an emergency.

4.    No work shall be done on LABOR DAY except in an extreme emergency and only with the approval of an Officer of the Union.

-3-
ARTICLE II

<u>RATES OF PAY</u>

SECTION

1.     The minimum hourly rate of wages shall be as follows:

| CATEGORY | 6/1/2022 through 5/31/2025 |
|---|---|
| Graphics Journeyman | $27.60 |
| Graphics Specialist (4th Year) | 90% of Journeyman rate |
| Graphics Assistant (B) (3rd year) | 80% of Journeyman rate |
| Graphics Assistant (2nd year) | 65% of Journeyman rate |
| Trainee (1st year) | 50% of Journeyman rate |

Nothing in this agreement shall preclude the Employer from Entering into an agreement with any Journeyman employee containing more benefits more favorable than those set forth herein.

Effective June 1, 2022 and through May 31, 2023  a $2.50 per hour economic package is to be divided between wages (+$1.53 per hour) Health & Welfare (+ $0.55) and Pension (+$0.42).

Effective June 1, 2023 and through May 31, 2024, a $2.50 per hour economic adjustment package to be allocated between wages and benefits by the Union in its sole discretion.

Effective June 1, 2024 and through May 31, 2025, a $2.50 per hour economic adjustment package to be allocated between wages and benefits by the Union in its sole discretion.

2.     Employees employed as Foreman, entrusted with the duties of giving orders and directing work, shall not receive less than Two Dollars ($2.00) per Eight (8) hour day, in addition to their regular compensation.

3.     When a Journeyman manages the operations of the shop (i.e., control of inventory and supplies, records and orderly flow of work, as well as the actual painting of signs etc.), said Journeyman shall receive a premium payment of no less than two (2) hours pay (at regular straight time) per day, in addition to the Journeyman regular compensation.

-4-
<u>ARTICLE III</u>

## OVERTIME

SECTION

3.01  All overtime work shall be paid at the rate of one and one-half (1 ½) times the employees hourly rate of wages. All work done before 7:00 a.m. of after 5:00 p.m., Monday through Friday, shall be considered as overtime. Seasonal work may start at 6:00 a.m. and end at 6:00 p.m., but hours worked in excess of eight (8) hours shall be considered overtime. Overtime on Saturday or Sunday shall be paid for at the rate of one and one-half (1 1/2) times the Employees rate. Overtime shall not be paid for more than once for the same hours worked.

-5-

## ARTICLE IV

## HIGH TIME

SECTION

4.01    Any employee working on signs and /or pictorial works on tanks, silos, stacks, elevated railroad girders, bridges, viaducts or hoppers, shall be paid one and one-half (1 ½) times the current rate of the employee.

4.02    All jobs which require employees to work sixty (60) feet or more above ground level, shall be paid one dollar $1.00 per hour over their regular straight time rate for the entire sign. Work performed One hundred (100) feet or more above ground level shall be paid at one and one-half (1 ½) times the regular straight time rate of pay. Work performed Two hundred (200) feet or more above ground level, shall be paid at two (2) times, the regular straight time rate of pay.

-6-

ARTICLE V

VACATIONS

SECTION

5.01 Paid vacations shall be granted to all permanent employees in accordance with the following schedule:

| YEARS OF EMPLOYMENT | LENGTH OF VACATION |
|---|---|
| 1 year | 1 week |
| 3 years | 2 weeks |
| 10 years | 3 weeks |
| 20 years | 4 weeks |

If an employee is laid off, discharged or terminates employment, the employee shall receive vacation pay from his or her last anniversary date according to the following schedule, in addition to any vacation not used from the previous year.

| | |
|---|---|
| After first year of employment, but less than 3 years of employment; | 2% of total straight time pay |
| After three years, but less than ten years of employment: | 4% of total straight time pay |
| After ten years, but less than twenty years of employment: | 6% of total straight time pay |
| After twenty years: | 10% of total straight time pay |

5.02 If an employee resigns during the first year of employment, the employee shall forfeit his or her vacation. Being absent from work for two (2) weeks or more without a reasonable excuse during the first year of employment shall be considered a resignation.

5.03 Employees who enter the Armed Forces of the United States Government, shall not lose their seniority by reason of such service, and upon their return to civilian life, shall be given full seniority credit for the elapsed time.

-7-

## ARTICLE VI

## PAID HOLIDAYS

SECTION

6.01   The following days (or the days on which they are legally celebrated) shall be recognized as paid holidays under this Agreement):

| | |
|---|---|
| New Years Day | Thanksgiving Day |
| Good Friday | Friday after Thanksgiving |
| Memorial Day | Day before Christmas |
| Independence Day | Christmas Day |
| Labor Day | New Years Eve Day |

6.02   All employees in the employ of the Employer at least thirty (30) calendar days, prior to one of such ten (10) holidays, shall be paid eight (8) hours pay at the minimum hourly rate of wages, for that holiday, provided the employee works or is available to work, on the employee's last regularly scheduled workday preceding, and the first regularly scheduled workday following the holiday (unless absence on either of such days, or both, as the case may be, was with the consent of the Employer, or due to a confirmed illness.

6.03   Time actually worked on any said holidays shall be paid for at the rate of two (2) times the minimum hourly rate of wages, in addition to the holiday pay.

6.04   If a holiday listed above falls on a Saturday, or if the employee is laid off during the holiday period, or is ill or on authorized leave of absence, and returns to work within thirty (30) days, the employee shall be entitled to pay for the holiday occurring within that period.

6.05   If any of the above holidays occurs during the vacation period of an employee, the employee shall be paid for such holiday, and the employee's vacation period shall accordingly be extended one more working day with pay.

-8-
## ARTICLE VII

### JURY DUTY AND FUNERAL LEAVE

SECTION

7.01 The Employer shall grant to regular full-time employees who are required to serve on jury service, the difference each week between the employees regular straight time weekly earnings (not to exceed forty (40) times the employees minimum hourly rate of wages) and any jury fee paid to the employee with a copy of the paid fee submitted to the Employer. The employee shall notify the Employer upon receipt of jury service notice as soon as practicable. Time spent on jury duty shall be considered as time worked for all purposes under this Agreement. When an employee is released for a day or part of a day during any period of jury service, the employee shall report to the Employer's shop for work. Employees required to serve on jury duty while they are on layoff, leave of absence or absence due to disability or other reasons shall not be entitled to benefits under this section. Jury pay is limited to two (2) weeks.

7.02 The Employer agrees to pay regular full-time employees for necessary absence on account of death in the immediate family, for two (2) scheduled workdays, at straight time, provided the employee attends the funeral. The term " immediate family" shall mean the employee's spouse, mother, father, brothers, sisters, legitimate children, grandparents, father-in-law, mother-in-law, legal guardian and adopted foster children & grandchildren. Benefits under this section shall not be available to employees for death in the immediate family arising while they are absent from work due to layoff, leave of absence, disability or other reasons.

-9-

ARTICLE XVIII

TRANSPORTATION, MEAL AND INCIDENTAL EXPENSES

SECTION

8.01    All employee transportation expenses, whenever required by the
        Employer, during the course of a workday (i.e., not for traveling to and/or
        from an employees home and the office or job location), and required
        incidentals such as telephone calls, etc. shall be paid by the Employer.

8.02    Employees of the Employer "on the road" shall receive Thirty Dollars
        ($30.00) per day for board together with normal lodging and transportation
        expenses, from the date of leaving until they return to home base, except
        that a prorated amount will be paid for partial days the employee is "on the
        road".

8.03    When an employee is required to his or her own vehicle for transportation
        to and from the work site during the employee's working day for the
        convenience of the Employer, the employee shall receive Thirty Dollars
        ($30.00) per day. Should the employee work less than four (4) hours in the
        day outside the shop, one-half (1/2) of such sum shall be paid.

-10-
ARTICLE IX

SAFETY

SECTION

9.01    In accordance with the requirements of the Occupational Safety and Health Act of 1970, it shall be the exclusive responsibility of the Employer to ensure the safety of its employees and compliance by them with any safety rules contained herein or established by the Employer. Nothing in this Agreement will make the Union liable to any employees or to any other persons in the event that work-related disease, sickness, death, injury, or accident occurs.

9.02    The Employer shall, at all times, provide safe tools, materials, equipment and safe working conditions. If at any time, in the opinion of the employee, such tools, materials, or equipment or working conditions are unsafe and constitute a hazard to health or physical safety, the employee shall have the right to refuse to work with such tools, materials and equipment or under such hazardous conditions unless or until they are safe. No employee shall be dismissed, disciplined, or otherwise discriminated against, nor shall his/her pay be withheld, for refusal to work with such unsafe tools, materials, or equipment or under such unsafe or hazardous working conditions.

9.03    The Employer agrees that during the life of this Agreement, the Employer shall comply with all applicable Federal and State Laws concerning occupational safety and health, including all applicable standards, rules, and regulations issued pursuant thereto.

9.04    The Employer shall provide at no cost to the employee, all necessary personal protective equipment and instructions on the proper use of such equipment. The Employer shall provide for the proper maintenance and cleaning of all necessary personal protective equipment. If at any time, in the opinion of the employee, such personal protective equipment is defective, has not been properly maintained, or is not the appropriate personal protective equipment under the particular working conditions, the employee has the right to refuse to work with such equipment. No employee shall be dismissed, disciplined or otherwise discriminated against, nor shall have his pay withheld for refusal to work with such defective, improperly maintained, inappropriate personal protective equipment. The employee shall immediately report to the Employer such defective, improperly maintained, or inappropriate personal protective equipment.

-11-

9.05    The Employer shall notify the Union sixty (60) days in advance of any changes, in conditions of employment that may affect the health and safety of employees.

9.06    Except as clearly and specifically required by law or regulation, the Employer shall not require any employee to sign any form or statement

dealing with health and safety, hazards in the workplace, unless that form or statement has been negotiated with and agreed upon by the Union.

9.07 Employees who do not use the company issued safety equipment (not in conflict with the above sections) can be admonished in the following manner:

1st offense............ Verbal warning
2nd offense............ Written warning
3rd offense............ Three-day suspension
4th offense............ Five-day suspension
5th offense............. Termination

The Union must be notified in writing of all infractions. The Union must be notified in writing before any suspensions are enforced.

9.08 The Employer will also use the above disciplinary process for the purpose of addressing non-safety related issues (attendance, tardiness, insubordination, etc.).

-12-
ARTICLE X

TIME REPORTS – DIVISION OF – WORK PAYROLL

SECTION

10.01 When the work falls below the amount necessary to give employment to regular employees of any shop, the work shall be divided, decision to be based on comparative skills of employees in relation to work to be completed, so that each of such regular employees shall receive, so far as practicable, an equal amount of work time each week.

10.02 Regular employees are those who have been employed by the Employer for a period of at least six (6) consecutive months prior to such curtailment of work.

10.03 Where an Employer operates in so called separate branches of the trade, each branch shall be considered a separate unit within the meaning of this section.

10.04 The Employer shall keep in its place of business a permanent, complete and accurate record of time worked and wages paid to each employee, together with a daily or weekly time report of each employee, showing the amount of time worked on each job each day, and such other records as may be necessary to enable the Representative of the Union to verify the time worked and wages paid. The complete records must be retained by the Employer for a period of four (4) years from the date of wages paid and must at all times be open to inspection by any authorized Representative of the Union.

10.05 Wages of all employees in the collective bargaining unit shall be paid weekly in cash or negotiable check.

10.06 All adjustments to be made to an employee regarding underpayment of wages or any other reimbursements due the employee, shall be made by the Employer at a date not later that the next payroll.

-13-
## ARTICLE XI

## SENIORITY - LAYOFF – SEVERANCE PAY

SECTION

11.01   In the event of lack of work or other cause, when layoffs or loss of time is necessary such layoffs shall be by inverse order of seniority and work shall not be sub contracted while any employee is on layoff status.  Such layoffs shall apply Company wide, but Journeyman shall be retained as long as ant type of work for which they are qualified is available, in preference to other employees. A seniority list of all employees covered by this Agreement shall be established.

11.02   An employee shall remain on the seniority list after a layoff provided such employee is recalled within a period of twelve (12) months from the date of layoff. It is the sole responsibility of the Employer to notify laid off workers of their recall.

11.03   The Union shall be furnished with a current seniority list of all employees covered by this Agreement within thirty (30) days after its' execution, and the Shop Stewards and the Union shall be notified when employees are to be laid off or recalled.

11.04   New employees shall be regarded as "temporary" employees until the completion of the ninety (90) working days employment, (Section 13.01 shall apply) after, which time their seniority shall be established from their date of hire. In the event of a layoff or reduction of workforce, temporary employees shall be laid off first.

11.05   After an employee has been employed by the Employer for six (6) consecutive months, the Employee shall be given three (3) days notice or the equivalent thereof in salary, in case the Employee's services are permanently terminated by the Employer, but this will not apply if the employee is fired for cause.

-14-
ARTICLE XII

SUBCONTRACTING – UNION LABEL – DISCRIMINATION
SECTION

12.01 No Contractor shall sublet work to another Contractor if employees covered by this agreement are capable of executing such work. When it is necessary to sublet work to another Contractor subject to applicable law, such work shall be done by Contractors who have Union contracts and observe similar wages, hours and conditions of employment as are contained in this Agreement.

12.02 Under no circumstances shall a sign painter or company be permitted to work on any sign previously started in any way by some other sign painter or company unless cleared through the Union and/or the other sign painter or company.

12.03 The Union Label is the property of the Union and shall appear on all signs. All sketches and designs shall bear the Union Label and names of the artists who made them.

12.04 Neither the Union nor the Employer shall discriminate against any employee or applicant for employment or Union membership, because of race, creed, color, age, sex, place of national origin, veteran status, or disability (providing the disability does not impair the ability of the Employee or applicant for employment to perform the required duties).

12.05 The Contractor or the Employer party to this Agreement, when engaged in work outside the geographical jurisdiction of the Union party to this Agreement, shall employ not less than fifty percent (50%) of the workers employed on such work from among the residents of the area where the work is performed, or from among persons who are employed, the greater percentage of their time in such area; any others shall be employed only from the Employers home area. The Employer party hereto shall, when engaged in work outside the geographical area of the Union party to this Agreement, comply with all of the lawful clauses of the Collective Bargaining Agreement in effect in said other geographical jurisdiction and executed by the Employers of the industry and the affiliated Local Unions in that jurisdiction, including but not limited to, the wages, hours, working conditions, fringe benefits, and procedure for the settlement of grievances set forth therein; provided however, that as  to employees employed by such Employer from within the geographic jurisdiction of the Union party to this Agreement and who are brought into an outside jurisdiction,

-15-

such employees shall be entitled to receive the wages and conditions effective in either home or outside jurisdiction, whichever are more favorable to such employees, and fringe benefits contributions on behalf of such employees shall be made solely to their home funds in accordance with their governing documents. This provision is enforceable by the Local Union or District Council in whose jurisdiction the work is being performed,

both through the procedure for settlement of grievances set forth in its applicable Collective Bargaining Agreement and through the courts, and is also enforceable by the Union party to this Agreement, both through the procedure for the settlement of grievances set forth in this Agreement and through the courts.

12.05  To protect and preserve, for the employees covered by this Agreement, and all work they have performed and all work covered by this Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of such work, it is agreed as follows: If the Employer performs on-site construction work of the type covered by this Agreement, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the Employer, through its officers, directors, partners, owners, or stockholders, exercises directly or indirectly (through family members or otherwise), management, control, or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work.

All charges of violations of the above shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement on the handling of grievances and the final and binding resolutions of disputes. As a remedy for violations of this Article, the Joint Trade Board or arbitrator shall be able, at the request of the Union, to require an Employer to pay 1) to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages those employees have lost because of the violations, and 2) into affected Joint Trust Funds to which this Agreement requires contributions, any delinquent contributions that resulted from the violations. The Joint Trade Board or Arbitrator shall be able also to provide any other appropriate remedies, whether provided by law or this Agreement. The Union shall enforce a decision of the Joint Trade Board or Arbitrator under this Article only through arbitral, judicial, or governmental (for example), the National Labor Relations Board channels. If, after an Employer has violated this Article, the Union and/or the Trustees of one or more Joint Trust Funds to which this Agreement requires contributions institute legal action to enforce an award by an Arbitrator or the Joint Trade Board remedying such violation, or defend an action that seeks to vacate such award,

-16-

the Employer shall pay any accountants and/or attorneys fee incurred by the Union and/or the Joint Trust Funds, plus costs of the litigation, that has resulted from such legal action. This section does not affect other remedies, whether provided by law or this Agreement that may be available to the Union and/or the Joint Trust Funds.

-17-

## ARTICLE XIII

## UNION SECURITY - CHECK OFF – STEWARDS

SECTION

13.01 All present employees who are members of the Union on the effective date of this Agreement or on the date of execution of this Agreement, whichever is the later, shall remain members of the Union in good standing as a condition of employment. All present employees who are not members of the Union and all employees who are hired shall become and remain members in good standing of the Union as a condition of employment, on and after the thirty-first (31st) day following the beginning of their employment, or on and after the thirty-first (31st) day following the effective date of this Agreement or the date of execution of this Agreement whichever is later. For the purpose of this section "good standing" means having paid or tendered payment of the required initiation fee and/or dues. The Employer shall discharge any employee upon notice, in writing, that such employee did not become a member of the Union in "good standing" as required above, unless the employee tenders his or hers applicable initiation fee and/or dues within five (5) working days after the time such notice is required.

13.02 This Agreement, and any supplements or amendments thereto. Hereinafter referred to collectively as the "Agreement, shall be binding upon the parties hereto, their successors, and assigns, it is understood by this provision that the parties hereto shall not use any leasing or other transfer device to a third party to evade this Agreement. The Employer shall give notice of the existence of this Agreement, and this provision to any purchaser, transferee, lessee, assignee, etc. of the business and operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union, at the time the seller, transferor, or lessor, executes a contract or transaction as herein described. The The Union shall also be advised of the nature of the transaction, but not including financial details.

13.03 Upon receipt of a properly signed authorization form, from an employee, the Employer shall deduct from the weekly paycheck of such employee, the amount authorized and necessary to pay such Employee's Union dues. The Union will certify to the Employer the amount of dues for each employee. The Employer shall remit such deductions to the Union no later that the fifteenth (15th) day of the month following the month in which the deductions are made.

-18-

13.04 Employees covered by this Agreement shall have the right to respect any legal primary picket line validly established by any bona fide labor organization, and the Union party to this Agreement, has the right to

withdraw employees covered by this Agreement, whenever the Employer party to this Agreement is involved in a legitimate primary labor dispute with any bona fide labor organization.

13.05 No Shop Steward shall be subject to penalty, discipline, layoff or discharge for any act properly conducted in the performance of his or her duties as Shop Steward, when acting by authority of the Union. Shop Stewards shall not be laid off or discharged without the consent of the Union or its duly authorized representative.

13.06 Shop Stewards shall exercise only the following authority: they shall check the working cards of the Employees, make monthly reports pursuant to the Constitution and Bylaws of the Union, Immediately notify the Business Agent of any violations of the rules that may occur within their jurisdiction, and give complete information about every occurrence that may be of interest to the Union, with a copy of the violation to the Employer. Any other authorization heretofore given to Steward by custom, action or otherwise, for any purpose, is hereby withdrawn and declared null and void, Any other authority of the Steward, except as provided herein, shall be certified to the Employer in writing, signed by the proper officers of the Union and under the Seal of said Union.

13.07 The Employer agrees to permit the Business Representative of the Union to visit the Employers shop, establishment or establishments, when work is being performed to conduct proper Union business.

-19-

## ARTICLE XIV

### INSURANCE – EMPLOYER'S LIABILITY

SECTION

14.01  The Employer will comply with the provision of law relative to Worker's Compensation and Occupational Disease Insurance, and will insure members of the Union only in Insurance companies approved by the State of Indiana's Industrial Commission, the Union and the Painters District Council #14. The Business Agent of the Union is instructed to secure written proof from the Employer for compliance.

14.02  Whenever an employee is employed in any State of the United States or its territorial possessions other than the State of Indiana, the Employer agrees to cover such employee with Compensation and Occupational Disease Insurance that shall in no event, be less that the benefits provided by the Indiana law in such case.

14.03  Employees in the collective bargaining unit shall not be held liable for any damage or injury caused as a result of paint carried by wind, or any other accident on the part of the employee while in the service of the Employer, except where the result of the employee's gross negligence or where the employee acts intentionally.

-20-

ARTICLE XV

WELFARE

SECTION

15.01 The Employer agrees to make welfare contributions to the Chicago Painters & Decorators Welfare Fund, established pursuant to the Agreement and Declaration of Trust dated 1975 and/or its successors and assigns for the maintenance of the hospitalization, surgical, medical and other insurance coverage, there under for the benefit of employees covered by this Agreement, for each hour worked as described in Section 15.02 for each employee covered by this Agreement. In addition to the wages herein stipulated, said amounts may hereafter be amended in future bargaining as required to maintain the current level of benefits.

From June 1, 2022 until and through May 31, 2023, the Employer shall contribute Ten Dollars and Seventy Cents ($10.70) per hour for each hour an employee works.

**YEAR 2**

From June 1, 2023 until and through May 31, 2024, the Employer shall contribute the amount payable for the June 1, 2022 through May 31, 2023 term, plus such additional amount as the Union chooses to allocate from its June 1, 2023 economic adjustment package.

**YEAR 3**

From June 1, 2024 until and through May 31, 2025, the Employer shall contribute the amount payable for the June 1, 2023 through May 31, 2024 term, plus any additional amount as the Union chooses to allocate from its June 1, 2024 economic adjustment package.
If the above amounts are not needed, they will revert to the employee's wages.

15.02 The contributions required hereunder shall be due and payable on the twentieth (20th) day of each month covering the prior month. The Employer, upon making such payment, shall furnish necessary information in connection therewith as may be required by the Trustees of the aforesaid Fund, and/or its successors and assigns, upon forms supplied by the Trustees. For the purpose of this Article, each hour worked, including hours attributed to show up time, and other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable. Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to trainees and probationary employees.

-21-

15.03 The Agreement and Declaration of Trust set forth in this Article XV, and the Insurance Plan provided there under shall conform to the provisions of the

appropriate section of the Labor-Management Relations Act, as amended, and shall conform with the requirements of the Internal Revenue Code, so as to enable the Employer at all times to treat contributions to the Sign and Display Industry Insurance Fund as a deduction for income tax purposes.

15.04 The Trustees shall have the authority to have an Independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Welfare Fund. If Employer fails to make contributions to the Welfare Fund within twenty (20) days after the date required by this Agreement, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, and any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collecting the payments due together with attorneys' fees and such liquidated damages as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause, which may be provided or set forth elsewhere in this Agreement.

15.02 Owner/Operators, who are members, engaged in a work of a character falling within the jurisdiction covered by this collective bargaining agreement, will make contributions on behalf of themselves, in an amount of no less than One Hundred Sixty (160) per month.

## ARTICLE XVI

## UNION AND INDUSTRY NATIONAL PENSION FUND

SECTION

16.01 The only Agreement between the Employer and the Union regarding pensions or retirement for employees covered by this Agreement is as follows:

1. (A) On January 14, 2022, the Pension Fund elected to enter "Red Zone" status, requiring the adoption of a Rehabilitation Plan. The Rehabilitation Plan provides bargaining parties the opportunity to elect between two proposed "alternate schedules" of contributions and benefits or to accept the Rehabilitation Plan's Default Schedule. The parties to this Agreement hereby elect "Alternate Schedule 2" and adopt the following required increases to hourly Pension Fund contributions: - Effective June 1, 2022, there shall be an increase of 8% ($.42) above the existing hourly contribution rate of January 1, 2022 ($5.25), to new rate of $5.67 per hour. - Effective [June 1, 2023], there shall be an increase of 6% ($.32) above the January 1, 2022 contribution rate ($5.25). - Effective [June 1, 2024], there shall be an increase of 6% ($.31) above the January 1, 2022 contribution rate ($5.25). The combined increases will total 20% of the January 1, 2022 contribution rate to be in compliance with the Alternate Schedule 2 by December 31, 2024.

(B) For the purpose of this Article, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(C) Contributions shall be paid on behalf of any employee starting with the Employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to trainees and probationary employees.

-23-

(D) The payments to the Pension Fund required above shall be made payable to the I.U.P.A.T., Union and Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967.

The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he had actually signed the same.

16.02    The Employer hereby irrevocably designates as its representatives of the Board of Trustees such Trustees as are now serving, or will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time. All contributions shall be made at such at time and in such manner as the Trustee require and the Trustees may at any time conduct an audit in accordance with Article VI, Section 6 of the said Agreement and Declaration of Trust.

A.    If an Employer fails to make contributions to the Pension Fund within twenty (20) days after the date required by the Trustees, the Union shall have right to take whatever steps are necessary to secure compliance to this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collections of the payments due together with attorney fees and such liquidated damages as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike clause, which may be provided or set forth elsewhere in this Agreement.

B.    The Pension Plan and Annuity Plan adopted by the Trustees shall at all times conform with the requirements of the Internal Revenue Code, so as to enable the Employer at all times to treat contributions to the IUPAT Union and Industry Pension fund as a deduction for income tax purposes.

ARTICLE XVII

THE PAINTERS AND ALLIED TRADES
LABOR MANAGEMENT PARTNERSHIP FUND.

SECTION

17.01  1. (a)  Commencing with the 1ST day of June 2019 and for the duration of
the Agreement, and any renewals or extensions thereof, the Employer
agrees to make payments to the Painters and Allied Trades Labor
Management Cooperation Fund (Fund") for each employee covered by
this Agreement, as follows:

(b).  For each hour or portion thereof, for which an employee receives pay,
the Employer shall make a contribution of Ten ($0.10) cents to the Fund.

(c).  For the purpose of this Article, each hour paid for, including hours
attributable to show up time, and other hours for which pay is received by
the employee in accordance with the Agreement, shall be counted as
hours for which contributions are payable.

(d).  Contributions shall be paid on behalf of any employee starting with
the employee's first day of employment in a job classification covered by
this Agreement. This includes, but is not limited to, apprentices, trainees,
and probationary employees.

(e).  The Employer and Union signatory to this Agreement agree to be
bound by and to the Agreement and Declaration of Trust, as amended
from time to time, establishing the Fund.

2.  The Employer hereby irrevocably designates as its representative on the
Board of Trustees such Trustees as are now serving, or will in the future
serve as Employer Trustees, together with their successors.

3.  All contributions shall be made at such a time and in such manner as the
Trustees require, and the Trustees may at any time conduct an audit in
accordance with the Agreement and Declaration of Trust.

4.  If the Employer fails to make contributions to the Fund within twenty (20)
days after the date required by the Trustees, the Union shall have the right
to take whatever steps are necessary to secure compliance with this
Agreement, any other provision thereof to the contrary notwithstanding,
and the Employer shall be liable for all costs of collection of the payments
due together with attorney fees and such penalties as may be assessed
by the Trustees.

-25-

The Employers liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause, which may be provided or set forth elsewhere in this Agreement.

<u>ARTICLE XVIII</u>

<u>MANAGEMENT RIGHTS</u>

SECTION

18.01  The Employer shall have all rights to manage and conduct its business and the work of the Employee, except to the extent that such right is expressly restricted or abridged by a provision of the Agreement.

## ARTICLE XIX

## GRIEVANCE AND ARBITRATION

Should any dispute arise between the Employer and the Union, or between the Employer and any Employee as to the meaning, interpretation, or application of the provisions of this Agreement, there shall be no interruption of production and, where an employee is the aggrieved party such dispute shall be resolved in the following manner:

STEP 1. Between the Aggrieved employee, the Shop Steward and the head of the Department in which the employee works.

STEP 2. If no settlement is reached at STEP 1, the grievance shall be reduced to writing, dated signed by the aggrieved employee and the Shop Steward, and presented by the Union Representative of the Union to the designated representative of the Employer within ten (10) working days following the incident giving rise to the grievance. Failure to so present the grievance within ten (10) working days shall constitute a waiver of the grievance. Following such presentation, a meeting shall be held between the Business Representative of the Union and the designated representative of the Employer at a mutually agreeable time. If no settlement is reached, the Employer shall answer the grievance in writing within ten (10) workdays following said meeting.

STEP 3. Within thirty (30) days from the date of the receipt of the Employer's written answer to STEP 2: the Union may submit the grievance to arbitration for final disposition by giving written notice to the Employer of its desire to arbitrate. The parties shall attempt to select a mutually agreeable arbitrator, but if they are unable to do so within ten (10) works days after the Union serves notice, they will request the Federal Mediation and Conciliation Service to name a panel of five (5) arbitrators. The Employer and the Union shall alternately strike two (2) names from such panel and the person whose name remains shall be the arbitrator. The Arbitrator shall have no power to add, subtract from, or otherwise modify the terms of this Agreement, and the arbitrator's decision shall be final and binding on the parties to the Agreement and the employee involved. The cost of the arbitration shall be borne equally by the Employer and the Union, but each party shall bear its own arbitration expenses.

In case where the Employer submits a dispute for arbitration, the Employer shall give the Union written notice of its desire to arbitrate. Thereafter, the last four (4) sentences of STEP 3 (above) shall apply, it

being understood that the notice referred to shall be the Employer's notice.

-28-

## ARTICLE XX

## SAVINGS – DURATION

SECTION

19.01 Should any part of this Agreement, or any provision herein contained, be rendered or declared invalid by any reason of any existing or subsequently enacted legislation, or by any degree of court of competent jurisdiction, such invalidation of such part or portion of this Agreements shall not invalidate the remaining portions thereof; provided however, upon such invalidation the parties signatory hereto agree to immediately meet or re-negotiate such parts or provisions affected.

19.02 The remaining parts or provisions shall remain in full force and effect.

19.03 This Agreement shall be effective June 1, 2022 and shall continue in full force and effect to and including May 31, 2025. Thereafter, the Agreement shall renew automatically, continuing from year to year thereafter, in the absence of notification by mail that either party desires to affect changes or alterations in the Agreement, or to terminate same; in such event, such party shall advise the opposite party; at least sixty (60) days prior to the date of the expiration of the Agreement or the date of expiration of any one (1) year renewal period, of its desire to affect changes or alterations, or to terminate the Agreement or the renewal, in which case negotiations shall commence at the earliest convenience of both parties, but not later than thirty days (30) after the receipt of such notification. This Agreement embodies the entire Agreement by the parties hereto and supersedes all other agreements between the Employer and the Union or the employees.

In Witness whereof, the said parties have hereunto set their hands and seals on the date indicated below.

For the Union:                                   For the Employer:

_____                    _____

Date 6-3-22                                      Date 6-3-22

-29-

**ADDENDUM II**
**JOINT COOPERATION TRUST FUND**

Section 1.    The Chicago Painters & Decorators Joint Cooperation Trust was established June 1, 1991. The purpose of this trust is and shall continue to be to improve the labor-management, relationships, job security, and organizational effectiveness of the IUPAT industry in such areas as the Union has geographical jurisdictional.

Section 2.    The Trust shall be managed by a Board of four (4) Trustees, a Trustee and an alternate to be appointed by the Painters Union and a Trustee and an alternate to be appointed by the Association. The Trust shall incorporate audit and impasse procedures in compliance with the LMRA d302.

Section 3.    The Employer shall contribute to this Fund a sum of five ($0.05) per hour for each hour worked by an employee or any other person who is subject to this Agreement.

Section 4.    The Employer hereby designates as its Representative on the Board of Trustees, such Trustees as are now serving, or who will in the future serve as Employer Trustees, together with their successors. The Union hereby designates as it Representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, Union Trustees, together with their successors.

Section 5.    All contributions shall be made at such time and in such manner as the Trustees require and the Trustees at any time conduct an audit in accordance with the Agreement and Declaration of Trust. The contribution rate may be increased based upon a reasonable demand made by the Association and approval of such increase by the Union.

Section 6.    If an Employer fails to make contributions to the Fund with twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, and any other provision hereto the contrary notwithstanding and Employer shall be liable for liquidated damages and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedures or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

-30-